UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KENNETH H. MILLER, | ) | |
|---|---|---|
| *Plaintiff,* | ) | |
| | ) | No. 3:17-CV-521 |
| v. | ) | |
| | ) | Judge Collier |
| RETIREMENT PROGRAM PLAN FOR EMPLOYEES OF CONSOLIDATED NUCLEAR SECURITY, LLC, | ) ) ) ) | |
| *Defendant.* | ) | |

## **M E M O R A N D U M**

This case arose as a result of a dispute over when Plaintiff's pension benefits began to accrue under the Retirement Program Plan for Employees of Consolidated Nuclear Security ("the Plan"). On August 26, 2019, the Court of Appeals for the Sixth Circuit reversed this Court's interpretation of the Plan and remanded the case for proceedings consistent with its opinion. (Doc. 31.) Before the mandate issued, Plaintiff filed a motion to amend his complaint to raise a new claim against Defendant Retirement Program Plan for Employees of Consolidated Nuclear Security, LLC ("Defendant") and add a new defendant. (Doc. 32.) Defendant opposed Plaintiff's motion (Doc. 36) and moved for an entry of judgment pursuant to the mandate (Doc. 35). For the reasons outlined below, the Court **DENIES** Plaintiff's motion to amend (Doc. 32) and **GRANTS** Defendant's motion for an entry of judgment (Doc. 35).

**I.   BACKGROUND**

On December 6, 2004, Plaintiff began working for Babcock & Wilcox Technical Services, Y-12, LLC ("BWXT"), the prime contractor for Y-12, a United States Department of Energy nuclear weapons manufacturing facility. (Doc. 1.) In 2005, Plaintiff received a letter from BWXT

informing him that employees could be given credit "for purposes of vesting and eligibility to participate in the pension and 401(k) savings plans" for prior services performed as "leased employees," which for Plaintiff meant his time working for CDI Corporation, a subcontractor for one of the Y-12 prime contractors. (Doc. 15-1 at 57.) As a result, Plaintiff's "credited service date" was adjusted to November 21, 1992, his hire date with the subcontractor. (*Id.*)

In October 2016, Plaintiff submitted a claim for pension benefits based on his 1992 hire date. (Doc. 1.) The Plan denied the claim in November 2016 and denied Plaintiff's two subsequent appeals in February and July 2017, explaining that Plaintiff's pension benefits only began to accrue when he started working for BWXT. (*Id.*) Plaintiff then filed this lawsuit on December 1, 2017, contending Defendant wrongfully denied his claim for benefits. (*Id.*) On November 13, 2018, the Court granted Plaintiff's motion for judgment on the administrative record against Defendant, ordering Defendant to use November 21, 1992, when calculating Plaintiff's pension benefits. (Doc. 22.) Defendant appealed and the Court of Appeals reversed this Court's decision. (Doc. 31.)

The Court of Appeals explained that the term "Credited Service" has two different meanings within the plan: "one meaning applied for the purpose of calculating the amount of an employee's pension; the other applied to determine whether the employee had a 'vested' right to benefits." (*Id.*) The first meaning of "Credited Service" is defined as the "Employee's Company Service Credit," which is "the service used to determine *the amount of* a Participant's Accrued Benefit for benefit accrual purposes[.]" (*Id.* at 3 (emphasis in original).) "Company Service Credit" includes only the time after an employee "first performs an Hour of Service for a Participating Employer," thereby excluding Plaintiff's time working for the subcontractor. (*Id.*) The second meaning for "Credited Service" includes service as a leased employee, but "for

participation and vesting purposes" only. (*Id.* at 4.) As a result, Plaintiff's company service credit, which is used to determine pension benefits, began on December 6, 2004, not November 21, 1992. (*Id.*) Thus, the Plan's terms supported the Plan Administrator's decision to deny Plaintiff's claim. (*Id.* at 5.) The Court's judgment was reversed and remanded. (*Id.*) The mandate issued September 19, 2019. (Doc. 34.)

Before the mandate issued, Plaintiff filed a motion to amend his complaint to add a new claim against Defendant and add Consolidated Nuclear Security, LLC ("CNS"), the prime contractor for Y-12 and "plan sponsor" as of 2014, as a defendant. (Doc. 32.) Plaintiff contends Defendant and CNS agreed Plaintiff's general "Credited Service Date" was November 21, 1992, until the case was appealed. (Doc. 33.) Plaintiff argues Defendant and CNS then "conceded only that [Plaintiff's] Credited Service began in 1992 for purposes of vesting." (*Id.*) Plaintiff explains that as a result of this shift, he "now has a colorable claim for breach of fiduciary duty based on Defendants' misrepresentations about his credited service date and, therefore, his pension benefits." (*Id.*)

Defendant opposes Plaintiff's motion and has filed a motion for an entry of judgment. (Docs. 35, 36.) Defendant contends the Court should deny Plaintiff's motion to amend because (1) it cannot be reconciled with the Sixth Circuit's mandate; (2) a Rule 15(b) motion cannot be filed after a judgment is entered and his motion does not satisfy Rules 59 or 60; and (3) even if Rule 15(b) could apply, the amendment was unduly delayed and would result in significant prejudice to Defendant. (Doc. 36.)

## II. STANDARD OF REVIEW

### A. Motion to Amend

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading with the court's leave, which "[t]he court should freely give . . . when justice so requires." The district court's discretion in considering motions to amend is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)). The Court may consider "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . " in determining whether to grant the motion to amend. *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B. Motion for Entry of Judgment

Federal Rule of Civil Procedure 58 requires that "[e]very judgment and amended judgment must be set out in a separate document . . . ." A party may "request that judgment be set out in a separate document." Fed. R. Civ. P. 58(a).

## III. DISCUSSION

The Court will first address the effect of the Sixth Circuit's mandate before discussing whether Plaintiff can amend his complaint to add a claim against Defendant and add a new defendant.

### A. Mandate Rule

"[A] district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999). The purpose of this constraint,

known as the mandate rule, is to prevent "[r]epetitive hearings, followed by additional appeals," which ultimately waste limited judicial resources. *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003).

The mandate rule "compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or *impliedly* decided by the appellate court." *O'Dell*, 320 F.3d at 679 (quoting *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis in original). The mandate rule is divided into two parts: (1) the limited remand rule, which applies when the appellate court acts, and (2) the waiver rule, which applies when a party acts or fails to act. *O'Dell*, 320 F.3d at 679. This rule is subject to narrow exceptions, including "where there is substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice." *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (internal quotations omitted).

### 1. Limited Remand Issue

Upon remand, the district court must "implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and circumstances it embraces." *Moored*, 38 F.3d at 1421. The Court of Appeals has broad discretion in delineating the scope of the mandate as general or limited in nature. *United States v. Stout*, 599 F.3d 549, 555 (6th Cir. 2010). A general mandate gives "district courts authority to address all matters as long as remaining consistent with the remand[,]" while a limited mandate "explicitly outline[s] the issues to be addressed by the district court and create[s] a narrow framework within which the district court must operate." *Campbell*, 168 F.3d at 265. The difference between a limited mandate and a general one is "the presence of limiting language." *O'Dell*, 320 F.3d at 679–81.

Here, the mandate states: "The district court's judgment is therefore reversed, and the case is remanded for proceedings consistent with this opinion." (Doc. 31.) While the mandate itself does not contain "limiting language," the context clearly evidences its limited scope.

The issue on appeal was "whether [Plaintiff's] time as a leased employee counts as credited service as that term is used in the provisions that define the amount of his pension." (Doc. 31 at 3.) The Court of Appeals determined that Plaintiff's time as a leased employee did not count towards the accrual of his pension benefits because benefits are calculated based on company service credit, which explicitly excludes leased employee time. (*Id.*) Before setting out the mandate, the Court of Appeals concluded, "[i]n sum, we are bound to enforce the plan's terms. Those terms unambiguously support the Administrator's decision." (*Id.*) By expressly deciding the sole issue on appeal in Defendant's favor and remanding the matter for proceedings consistent with that decision, the Court finds the Sixth Circuit's decision clearly conveys an "intent to limit the scope of the district court's review." *O'Dell*, 320 F.3d at 679–81.

The Court also finds there is no evidence to suggest one of the narrow exceptions to the mandate rule applies in this case. *See Moored*, 38 F.3d at 1421. Plaintiff does not contend the Court of Appeals issued a clearly erroneous decision, but rather seeks to amend his complaint based on that decision. (Doc. 33.) As a result, the Court finds the new claim would not produce substantially different evidence and there is not a risk of manifest injustice based on the Court of Appeals' decision. In addition, there has not been any contrary view of law provided by any controlling authorities on the interpretation of the Plan's terms.

Accordingly, the Court finds Defendant's denial of Plaintiff's claim for benefits was supported by the Plan's terms.

### 2. Waiver Issue

"[W]here an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *O'Dell*, 320 F.3d at 679 (quoting *Ben Zvi*, 242 F.3d at 95); *see also United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997) ("A party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter . . . ."). The waiver rule is designed to prevent the outcome where "a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Adesida*, 129 F.3d at 850. It also promotes efficiency and finality, and protects appellate courts from "piece-meal appeals." *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 987 (6th Cir. 2006).

Here, Plaintiff seeks to amend his complaint to add a new claim against Defendant, which Defendant contends he waived by failing to raise it previously. The threshold question, then, is whether Plaintiff could have raised his claim against Defendant prior to the appeal.

Plaintiff contends he did not discover the "depth of Defendant's misrepresentations until the plan's story changed on appeal." (Doc. 37 at 1.) Plaintiff claims prior to appeal Defendant consistently communicated that Plaintiff's credited service date was November 21, 1992, generally and for vesting and participation purposes. (*Id.*) At oral arguments on appeal, Plaintiff asserts Defendant switched positions by arguing the 1992 date was for vesting purposes only, not for benefit calculations or plan participation. (*Id.*) Plaintiff has not pointed to any specific statements by Defendant, but rather quotes from the Court of Appeals' opinion in which the court "found that '[T]he Retirement Program has conceded only that Miller's Credited Service began in 1992 for

7

purposes of vesting.'" (Doc. 33 at 2.) Based on this alone, Plaintiff contends Defendant's prior communications were false, giving rise to a breach of fiduciary duty claim. (*Id.*)

The record, however, demonstrates Plaintiff knew he could have raised a breach of fiduciary duty claim prior to the appeal. In a hearing before this Court, Plaintiff's counsel was asked whether providing credited service based on leased employment could be used as an inducement to work at Y-12. (Doc. 29 at 19–20.) Plaintiff's counsel replied,

> I suppose it would be. And . . . there were a lot of issues that I did not raise in this lawsuit and were not discussed in the appeal process, that being one of them, *because it raises fiduciary issues* . . . To me, this is just a clear interpretation of the plan.

(*Id.* at 20 (emphasis added).) Counsel went on in the same answer to say,

> And, in fact, I would say . . . that construction, . . . would . . . *implicate fiduciary considerations, fiduciary breach considerations, breach of trust considerations*, because they've decided to creatively interpret a clear plan provision because they don't like the outcome of it for certain employees. Now I don't think that's what's at play here.

(*Id.* at 20–21 (emphasis added).) Further adding,

> And . . . it would be a *violation, not only of their fiduciary obligations*[,] but of the very clear terms of the plan, for them to go back on that promise now, a promise that they don't dispute that they made.

(*Id.* at 22 (emphasis added).)

Plaintiff also sent a letter to the Court of Appeals after oral arguments clarifying that "he is not advancing estoppel or other fiduciary claims in this case." (Doc. 30 in *Kenneth Miller v. Retirement Program Plan*, Case No. 18-6314 (6th Cir. 2019).) The record clearly demonstrates that Plaintiff acknowledged a possible breach of fiduciary duty claim throughout the litigation, but chose not to raise it until now. Plaintiff cannot employ a piece-meal approach to raising claims against Defendant. *See Waste Mgmt. of Ohio, Inc.*, 169 F. App'x at 987. Plaintiff knew he could

bring the claim prior to his appeal, and by choosing not to do so, he has waived his right to raise the claim. *See Adesida*, 129 F.3d at 850.

### B. Plaintiff's Motion to Amend

Because the Court has determined Plaintiff waived his right to raise a claim for breach of fiduciary duty against Defendant, the Court need only consider Plaintiff's motion to amend as it applies to his attempt to add a new defendant.

When determining whether to permit an amendment under Federal Rule of Civil Procedure 15,[1] a court may consider several factors, including, "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment . . . ." *Hageman*, 486 F.2d at 484 (citing *Foman*, 371 U.S. at 182). While it may be considered as a factor, "[d]elay by itself is not sufficient reason to deny a motion to amend." *Hageman*, 486 F.2d at 484. In addition, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.*

Here, Plaintiff seeks to add a new claim, breach of fiduciary duty, against a new defendant, CNS. (Doc. 32.) The Court finds the factors weigh against allowing the amendment.

---

[1] In its response in opposition to Plaintiff's motion (Doc. 36), Defendant contends Rule 15 does not apply because "[f]ollowing entry of final judgment, a party may not seek to amend their complaint without first moving to alter, set aside or vacate judgment pursuant to either Rule 59 or Rule 60 of the Federal Rules of Civil Procedure." *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). In this case, however, a final judgment had not been entered when the motion was filed, even though the Court of Appeals had issued an opinion in favor of Defendant. *See JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1105 (6th Cir. 2019) (explaining "[a] final decision 'generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'") (quoting *Genesys, Inc. v. Greene*, 437 F.3d 482, 485 (6th Cir. 2005)). As a result, the Court will assume Rule 15 is applicable to Plaintiff's motion.

First, Plaintiff knew CNS was the plan sponsor as of 2014. (Doc. 32-1.) Plaintiff's counsel also admitted to knowledge of potential fiduciary duty claims as of October 10, 2018. (Doc. 29 at 20.) Despite this knowledge, Plaintiff has waited nearly a year to propose adding CNS as a defendant.

In addition, Plaintiff's proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss. A court may deny a motion to amend as futile if the amended complaint could not withstand a Rule 12(b)(6) motion to dismiss. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).

In deciding a 12(b)(6) motion to dismiss, a court must first accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). All ambiguities must be resolved in the plaintiff's favor. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993) (citing *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577 (6th Cir. 1992)). Bare legal conclusions, however, need not be accepted as true. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Here, Plaintiff is seeking to add a claim for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"). (Doc. 32.) ERISA requires that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries" and imposes a fiduciary duty upon plan administrators. *See* 19 U.S.C. § 1104(a)(1); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) (explaining ERISA's fiduciary duty includes a duty of loyalty, a "prudent person" duty, and a duty to "act for the exclusive purpose of providing benefits to plan beneficiaries."). "Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of

benefits under a plan) will support a claim for a breach of fiduciary duty.'" *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) (quoting *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992)). As a result, Plaintiff must provide some evidence of misleading communications by CNS to successfully state a claim against it.

Plaintiff's proposed amended complaint, however, does not allege any facts that CNS made any misrepresentations to Plaintiff. The proposed complaint asserts that over the course of fifteen years Defendant and CNS consistently stated that Plaintiff's credited service date was November 21, 1992, but "now argue that [Plaintiff's] Credited Service date is November 21, 1992 only for purposes of vesting, a material change in its previous representations . . . ." (Doc. 32-1 at 9–10.) The proposed complaint also asserts Defendant and CNS misrepresented to Plaintiff that the determination of pension calculation date was not appealable. (*Id.* at 6.)

Plaintiff has not alleged any facts to support these bare legal conclusions. Plaintiff has not alleged any statements CNS has made indicating it is now arguing the 1992 date is for vesting purposes only. Instead the proposed complaint only mentions a switch in position by Defendant, not CNS, which is further demonstrated by Plaintiff's sole focus on Defendant's actions in his memorandum in support of his motion to amend (Doc. 33). Similarly, Plaintiff has not alleged any facts to suggest CNS told Plaintiff he could not appeal Defendant's determination of the pension calculation date. In fact, the record suggests Plaintiff did appeal the determination through two separate letters to Defendant in 2017. (Doc. 1.) Even construing all of the evidence in Plaintiff's favor, Plaintiff has failed to state any misrepresentations CNS made regarding the Plan, an essential element of Plaintiff's claim for breach of fiduciary duty.

Accordingly, the Court finds the proposed amendment would be futile and denies Plaintiff's motion to amend the complaint as it applies to CNS.

As discussed above, the limited mandate issued by the Court of Appeals clearly decides in Defendant's favor on the sole issue in the case: whether Plaintiff's pension benefits included his time as a leased employee. Therefore, this Court finds the administrative record supports Defendant's decision to deny Plaintiff's claim for benefits based on his leased employment. Because there are no other pending issues in this matter, the Court concludes entry of judgment in favor of Defendant is required. Defendant's motion for an entry of judgment is therefore granted.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiff's motion to amend (Doc. 32) and **GRANT** Defendant's motion for entry of judgment (Doc. 35).

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**